No. 22-2621

# In the United States Court of Appeals for the Seventh Circuit

G.G. AND DEANNA ROSE,

*Plaintiffs-Appellants,*

v.

SALESFORCE.COM, INC.,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of Illinois
Case No. 1:20-CV-2335
Hon. Andrea R. Wood

**BRIEF OF *AMICUS CURIAE*
INTERNATIONAL FRANCHISE ASSOCIATION IN SUPPORT OF
APPELLEE'S PETITION FOR REHEARING *EN BANC***

Yaakov M. Roth
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
Telephone: 202-879-3939
yroth@jonesday.com

J. Benjamin Aguiñaga
JONES DAY
2727 N. Harwood St., Suite 500
Dallas, TX 75201
Telephone: 214-220-3939
jbaguinaga@jonesday.com

*Counsel for* Amicus Curiae *International Franchise Association*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2621

Short Caption: G.G. v. Salesforce.com, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[✔] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Amicus curiae International Franchise Association (new)

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Jones Day (new)

(3) If the party, amicus or intervenor is a corporation:

　i) Identify all its parent corporations, if any; and
　　None.

　ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
　　None.

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
N/A

Attorney's Signature: /s/ J. Benjamin Aguinaga    Date: 8/24/2023

Attorney's Printed Name: J. Benjamin Aguinaga

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** [✔]  **No** [ ]

Address: 2727 N. Harwood St., Suite 500
Dallas, TX 75201

Phone Number: 214-220-3939    Fax Number: 214-969-5100

E-Mail Address: jbaguinaga@jonesday.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2621

Short Caption: G.G. v. Salesforce.com, Inc.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[✔] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Amicus curiae International Franchise Association (new)

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Jones Day (new)

(3) If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and
        None.

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
        None.

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
N/A

Attorney's Signature: /s/ Yaakov M. Roth     Date: 8/24/2023

Attorney's Printed Name: Yaakov M. Roth

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]    No [✔]

Address: 51 Louisiana Ave. NW

Washington, DC 20001

Phone Number: 202-879-3939     Fax Number: 202-626-1700

E-Mail Address: yroth@jonesday.com

rev. 12/19 AK

# TABLE OF CONTENTS

**Page**

IDENTITY AND INTEREST OF *AMICUS CURIAE* ................................................. 1

ARGUMENT ........................................................................................................... 2

    A.   The Panel Majority Erred by Expressly Rejecting the Ordinary Meaning of "Participation in a Venture." .......................................................... 2

    B.   The Panel Majority Erred in Holding that a TVPRA Defendant Need Not Constructively Know of the Specific TVPRA Violation of Which the Plaintiff Was a Victim. .................................................................. 7

CONCLUSION ...................................................................................................... 10

CERTIFICATE OF COMPLIANCE ..................................................................... 12

CERTIFICATE OF SERVICE .............................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.B. v. Hilton Worldwide Holdings Inc.*,
  484 F. Supp. 3d 921 (D. Or. 2020) ................................................................................7

*A.D. v. Marriott Int'l, Inc.*,
  2023 WL 3004549 (M.D. Fla. Apr. 19, 2023) ...............................................................6

*A.D. v. Wyndham Hotels & Resorts, Inc.*,
  2020 WL 68674205 (E.D. Va. July 22, 2020) ...............................................................6

*B.J. v. G6 Hospitality LLC*,
  2023 WL 3569979 (N.D. Cal. May 19, 2023) ...............................................................7

*Doe #1 v. Red Roof Inns, Inc.*,
  21 F.4th 714 (11th Cir. 2021) ................................................................................*passim*

*Doe #9 v. Wyndham Hotels & Resorts, Inc.*,
  2021 WL 1186333 (S.D. Tex. Mar. 30, 2021) ...............................................................7

*E.S. v. Best Western Int'l, Inc.*,
  510 F. Supp. 3d 420 (N.D. Tex. 2021) ...........................................................................7

*M.A. v. Wyndham Hotels & Resorts*,
  425 F. Supp. 3d 959 (S.D. Ohio 2019) ......................................................................5, 6

*Ricchio v. McLean*,
  853 F.3d 553 (1st Cir. 2017) ..........................................................................................4

*S.J. v. Choice Hotels Int'l, Inc.*,
  473 F. Supp. 3d 147 (E.D.N.Y. 2020) ............................................................................7

*Wisconsin Cent., Ltd. v. United States*,
  138 S. Ct. 2067 (2018) ...................................................................................................2

**STATUTES**

18 U.S.C. § 1591 ........................................................................................... 2, 7, 8, 10

18 U.S.C. § 1595 ...........................................................................................*passim*

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**OTHER AUTHORITIES**

Fed. R. App. P. 29 ................................................................................................1

## IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* International Franchise Association ("IFA") is the world's largest membership organization for franchisors, franchisees, and franchise suppliers. IFA seeks to protect and promote franchising by educating lawmakers, the judiciary, and the public, and defending the future of the franchising community.

IFA has a significant interest in this case, which involves the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"). Numerous recent TVPRA decisions—including the Eleventh Circuit's landmark decision in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021)—have arisen in the hospitality-industry context. There, plaintiffs have sued hotel franchisors, franchisees, and others, seeking to hold them liable for crimes that actual traffickers allegedly perpetrated behind closed doors in hotel rooms. Given IFA's interest in a proper interpretation of the TVPRA, IFA participated as an *amicus* in *Red Roof Inns*, and likewise seeks to participate as an *amicus* here given the Panel Majority's departure from *Red Roof Inns*.

Make no mistake: IFA vigorously opposes human trafficking. Nonetheless, the practical implications of the Panel Majority's decision are serious, and IFA has a material interest in ensuring that the *en banc* Court corrects course.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), IFA states that no party's counsel authored this brief in whole or in part; and no party or party's counsel, or any other person (other than IFA, its members, and its counsel), contributed money intended to fund the preparation or submission of this brief.

**ARGUMENT**

The TVPRA provides a civil cause of action to "a victim of a violation of this chapter" against "the perpetrator (or whoever knowingly benefits … from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)."  18 U.S.C. § 1595(a).  Here, the alleged "violation of this chapter" is a violation of 18 U.S.C. § 1591(a), which establishes the criminal prohibition on sex trafficking.  Op.9 & n.3.

The Panel Majority committed two errors in applying Section 1595(a).  *First*, the Panel Majority rejected the ordinary meaning of "participation in a venture" (as recognized by the Eleventh Circuit), without explaining why or supplying its own definition.  *Second*, the Panel Majority held (without acknowledging the Eleventh Circuit's contrary holding) that a defendant may be liable even without constructive knowledge of a Section 1591(a) violation against the plaintiff.  Each error cries out for correction.

> **A.  The Panel Majority Erred by Expressly Rejecting the Ordinary Meaning of "Participation in a Venture."**

**1.**  The Panel Majority principally erred by rejecting the ordinary meaning of "participation in a venture" without supplying its own definition.  *Cf. Wisconsin Cent., Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) (it is the judiciary's "job" to interpret "key statutory terms" "consistent with their 'ordinary meaning'").

It is important to "begin with the [alleged] venture" at issue. *Red Roof Inns, Inc.*, 21 F.4th at 726. After all, it is the venture that must have "violated the TVPRA" and it is the venture "in which the defendant [must have] participated and from which it [must have] knowingly benefited." *Id.* at 725. Accordingly—and relying on numerous dictionaries—the Eleventh Circuit interpreted "participation in a venture" "according to its plain meaning." *Id.* at 724. Specifically, "[t]he ordinary meaning of 'venture' is an undertaking or enterprise involving risk and potential profit." *Id.* And "[t]he ordinary meaning of participate or participation is to take part in or share with others in common or in an association." *Id.* at 725. "Participation in a venture," therefore, means to take "part in a common undertaking or enterprise involving risk and potential profit." *Id.*

Placing that ordinary-meaning interpretation within Section 1595(a) results in the following: A defendant may be liable if it knowingly benefited "from taking part in a common undertaking or enterprise involving risk and potential profit," where "that undertaking or enterprise violated the TVPRA as to the plaintiff" and "the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Id.* at 726.

For its part, however, the Panel Majority did not define "participation in a venture." The Panel Majority also "specifically" "reject[ed]" the view "that 'participation in a venture' requires direct participation in a 'common undertaking or enterprise involving risk and potential profit.'" Op.2. But there is no discussion of ordinary meaning or dictionary definitions in the Panel Majority's opinion, nor any

- 3 -

explanation for why it rejected the Eleventh Circuit's holding. Respectfully, that error requires correction. The *en banc* Court should thus follow the Eleventh Circuit by grounding its interpretation of Section 1595(a) in the ordinary meaning of "participation in a venture."

**2.** This correction is important because the Panel Majority suggested in passing that ordinary commercial transactions may qualify as "participation in a venture." That mistaken suggestion threatens confusion in TVPRA litigation, especially in hospitality-industry cases or other cases involving a franchised business.

In these cases, plaintiffs have attempted to characterize hotel franchisors and franchisees as part of "ventures" with the criminals who allegedly trafficked them in hotel rooms. If that characterization were accurate, then they could claim that the venture violated Section 1591(a) of the TVPRA by virtue of the trafficker's criminal conduct—and thus, the plaintiffs need only allege that the franchisor or franchisee knowingly benefited from its "participation" (by receiving room rental profits) and "should have known" of that violation. 18 U.S.C. § 1595(a).

That approach has been largely unsuccessful after the Eleventh Circuit's text-based decision in *Red Roof Inns*. For good reason: Barring extraordinary facts where a hotel intentionally joins forces with a criminal trafficker toward some common goal, franchise hotels and their customers—*especially* criminals—do not participate together in a common undertaking or enterprise involving risk and potential profit. *Cf. Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (trafficker and hotel manager "exchang[ed]

high-fives . . . while speaking about 'getting this thing going again,' in circumstances in which [the trafficker's] coercive and abusive treatment of [the plaintiff] as a sex slave had become apparent").

But the Panel Majority opinion suggests otherwise. According to the Panel Majority, "all that is necessary is for a plaintiff to allege [] a 'continuous business relationship,' which gives rise to an inference … that the civil defendant facilitated the venture's success." Op.25. This "continuous business relationship" language traces back to an early hotel TVPRA case, *M.A. v. Wyndham Hotels & Resorts*, 425 F. Supp. 3d 959 (S.D. Ohio 2019). There, in assessing whether the hotels themselves could be liable under Section 1595(a), the court never considered the ordinary meaning of "participation in a venture." Instead, the court deemed it sufficient for a plaintiff to allege "a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *Id.* at 970. And the court concluded that the hotels "participated in a venture" simply by "repeatedly rent[ing] rooms" to the trafficker. *Id.* at 970–71.

*M.A.* is wrong, which explains why the Eleventh Circuit ignored it. The *M.A.* court's fundamental error is that, by failing to identify and follow the ordinary meaning of "participation in a venture," the court never asked whether the hotels and the trafficker took part in a *common* undertaking or enterprise. Had the court done so, the result arguably would have been different because the plaintiff in *M.A.* alleged the

hotels' participation in a *sex-trafficking* venture, *id.* at 971—yet there was no serious claim that the hotels themselves "took part in the common undertaking of sex trafficking with … sex traffickers," *Red Roof Inns, Inc.*, 21 F.4th at 726.[2]

By repeating *M.A.*'s misguided "continuous business relationship" line—and by rejecting the ordinary meaning of "participation in a venture"—the Panel Majority opinion endorses this mistaken approach to Section 1595(a). This approach will lead (and already has led) TVPRA plaintiffs in the hospitality-industry context to hale the opinion as a return to the pre-*Red Roof Inns* era where a plaintiff need only allege the rental of hotel rooms, not an actual *common* undertaking. Moreover, by attempting to draw lines between "off-the-shelf … products or services" (not sufficient participation in a venture) and "tailored" products or services (sufficient), Op.30, 32, the Panel Majority's approach also will generate significant uncertainty in hospitality-industry litigation: A franchise hotel's room rental is an "off-the-shelf" product or service, yet the Panel Majority's repeated citations of *M.A.* (*e.g.*, Op.25) suggest that the Panel Majority may disagree.

---

[2] It also defies reason to suggest that a defendant "participated in a venture" involving trafficking if that same defendant undertook to detect and prevent trafficking. *See A.D. v. Marriott Int'l, Inc.*, 2023 WL 3004549, at \*4 (M.D. Fla. Apr. 19, 2023) ("The Complaint acknowledges that Defendants opposed sex traffickers, but fault Defendants for taking ineffective steps to curtail the traffickers. This hardly sounds like participation."); *A.D. v. Wyndham Hotels & Resorts, Inc.,* 2020 WL 68674205, at \*3 (E.D. Va. July 22, 2020) ("failure to affirmatively prevent or inhibit sex trafficking does not constitute participation").

The way to avoid all this is—as the Eleventh Circuit did in *Red Roof Inns*—to give "participation in a venture" its ordinary meaning.

### B. The Panel Majority Erred in Holding that a TVPRA Defendant Need Not Constructively Know of the Specific TVPRA Violation of Which the Plaintiff Was a Victim.

**1.** The Panel Majority separately erred in holding that a TVPRA plaintiff need only allege that a defendant had "constructive knowledge that a venture *generally* has violated Section 1591." Op.21–22. Here too, the Panel Majority "specifically" "reject[ed]" (at 2) the Eleventh Circuit's holding that a defendant must have constructive knowledge "that the undertaking or enterprise violated the TVPRA *as to the plaintiff*," *Red Roof Inns*, 21 F.4th at 726 (emphasis added).³ When attempting to distinguish contrary authorities, however, the Panel Majority never even acknowledged *Red Roof Inns*. *See* Op.19–22. The Panel Majority was mistaken. The *en banc* Court should hold instead that, under the TVPRA's plain text, a defendant must have constructively known of the specific criminal TVPRA violation of which the plaintiff was a victim.

---

³ Numerous other courts have likewise required constructive knowledge of the specific violation against the plaintiff. *See*, *e.g.*, *B.J. v. G6 Hospitality LLC*, 2023 WL 3569979, at *5 (N.D. Cal. May 19, 2023); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 938 (D. Or. 2020); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020); *Doe #9 v. Wyndham Hotels & Resorts, Inc.*, 2021 WL 1186333, at *1 (S.D. Tex. Mar. 30, 2021); *E.S. v. Best Western Int'l, Inc.*, 510 F. Supp. 3d 420, 428 (N.D. Tex. 2021).

As Judge Kirsch's dissent explained, "there is no such thing as a general violation of § 1591." Op.44. Section 1591 criminalizes the trafficking of "a person." 18 U.S.C. § 1591(a). Its "use of the terms 'a person' and 'the person' is victim-specific, meaning an individual is not guilty of the crime unless the government can prove that his actions were tied to a specific victim." Op.44. That victim-specific language is critical in Section 1595(a), which requires that a defendant "knew or should have known [that a venture] has engaged in an act in violation of [Section 1591(a)]." 18 U.S.C. § 1595(a). "[B]ecause § 1595 requires constructive knowledge of a § 1591 violation and a § 1591 violation requires knowledge of a specific victim, damages suits [under Section 1595(a)] are available only when a plaintiff plausibly alleges that the defendant should have known that the venture engaged in her particular sex trafficking." Op.44; *Red Roof Inns, Inc.*, 21 F.4th at 726 (same). And that straightforward reasoning is bolstered by other contextual clues in Section 1595.

*First*, Section 1595(a) principally gives a civil cause of action to "a victim of a violation of this chapter . . . against *the* perpetrator." (Emphasis added.) The logical interpretation of "*the* perpetrator" is that it refers to the perpetrator of *the* "violation of this chapter" of which the plaintiff was a victim. And again, that would require the plaintiff to establish, in a suit against the perpetrator, that "his actions were tied to a specific victim"—*i.e.*, the plaintiff. Op.44.

This matters because Congress added "participant" (*i.e.*, non-perpetrator) liability *in a parenthetical* following the grant of a cause of action against the perpetrator of the

violation. *See* 18 U.S.C. § 1595(a) ("An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits … from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)[.]"). The natural inference is that the "violation" referenced *inside* the parenthetical is the same specific violation referenced *outside* the parenthetical—*i.e.*, the violation the perpetrator committed and of which the plaintiff was a victim. Accordingly, the constructive-knowledge requirement turns on knowledge of that specific violation.

*Second*, Section 1595's remaining subsections reinforce this focus. Section 1595(b)(1) requires any civil action to be stayed "during the pendency of any criminal action arising out of *the same occurrence in which the claimant is the victim.*" (Emphasis added.) Similarly, Section 1595(c)(2) establishes a statute of limitations based on the plaintiff's age at "the time of *the alleged offense.*" (Emphasis added.) In each instance, Section 1595 focuses on the specific TVPRA crime committed against the plaintiff. The upshot is that the Section 1595(a) parenthetical at issue here is bookended by provisions that focus on a specific plaintiff's alleged trafficking. It thus necessarily follows that Section 1595(a)'s parenthetical likewise turns on constructive knowledge *of the specific TVPRA violation that involved the plaintiff's trafficking.*

**2.** Here too, the *en banc* Court's intervention is critically important to prevent what would amount to a strict-liability regime for TVPRA defendants, especially in the hospitality industry. As Judge Kirsch explained, under the Panel Majority's view,

Section 1595(a) liability would extend to "nearly every company and individual" who happens to engage in a business transaction with a criminal trafficker, Op.43, based only on the claim that they "had constructive knowledge that a venture *generally* has violated Section 1591" as to any person, at any time. Op.22.

Under that approach, hotel franchisees and franchisors alike could be held liable for *every* criminal act of traffickers who happen to rent hotel rooms. Not just that, but franchisees and franchisors (who do not run day-to-day operations) also theoretically could be liable without knowledge (constructive or actual) about the TVPRA violation involving the plaintiff's alleged trafficking. That is untenable. The alleged violation that permits a plaintiff to sue under Section 1595(a) as "a victim of a violation of this chapter" *must be* the same violation of which the defendant must have been constructively aware. *See Red Roof Inns, Inc.*, 21 F.4th at 719.

## CONCLUSION

IFA respectfully requests that the Court grant rehearing *en banc* and correct the Panel Majority's erroneous interpretation of the TVPRA.

Dated: August 24, 2023

Yaakov M. Roth
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
Telephone: 202-879-3939
yroth@jonesday.com

Respectfully submitted,

*/s/ J. Benjamin Aguiñaga*
J. Benjamin Aguiñaga
JONES DAY
2727 N. Harwood St., Suite 500
Dallas, TX 75201
Telephone: 214-220-3939
jbaguinaga@jonesday.com

*Counsel for* Amicus Curiae
*International Franchise Association*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with (1) the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) because, as calculated by Microsoft Word 2016, it contains 2,502 words, excluding the items exempted by Federal Rule of Appellate Procedure 32(f); and (2) the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in a 14-point Garamond font.

Dated: August 24, 2023 　　　　　　　　　　　　*/s/ J. Benjamin Aguiñaga*
　　　　　　　　　　　　　　　　　　　　　　　J. Benjamin Aguiñaga

## CERTIFICATE OF SERVICE

In accordance with Circuit Rule 25(a), I hereby certify that on August 24, 2023, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: August 24, 2023            */s/J. Benjamin Aguiñaga*
                                  J. Benjamin Aguiñaga